**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Randy W. Norman, | |
| Plaintiff, | Civil No. 3:25-cv-01885 (SVN) (TOF) |
| v. | |
| State of Connecticut et al., | July 1, 2026 |
| Defendants. | |

**RECOMMENDED RULING ON INITIAL REVIEW OF**
**THE COMPLAINT UNDER 28 U.S.C. § 1915**

## I.   INTRODUCTION

The plaintiff, Randy W. Norman, lost a foreclosure case in the Connecticut Superior Court.[1]  Months after the state court entered its judgment, Mr. Norman filed this federal lawsuit, claiming that the judges and parties in the foreclosure action conspired to deprive him of his rights.[2]  In his most recent Amended Complaint, he seeks a "Declaratory Judgment that the judgment and all orders" in the State Case "are void ab initio" and "[a]n Order compelling the vacatur of all orders and judgments entered in the state court," among other forms of relief.[3]  In other words, he asks this Court to overturn the judgment of the state Superior Court.

When Mr. Norman filed his complaint, he also filed for leave to proceed *in forma pauperis*, or "IFP" – that is, he asked for permission to start his lawsuit without paying the customary $405

---

[1]    *Finance of Am. Reverse LLC v. Widower, Heirs and/or Creditors of the Estate of Mavis L. Jones a/k/a Mavis L. Norman*, No. HHD-CV23-6176225-S (Conn. Super. Ct.).  Throughout this Recommended Ruling, I will refer to this case as the "State Case."
[2]    Initial Complaint, Docket No. 1.
[3]    Second Amended Complaint, Docket No. 64, at p. 17.

filing fee.[4]  His case was assigned to the Honorable Sarala V. Nagala, United States District Judge, and Judge Nagala granted his motion.[5]  But "[a] motion to proceed IFP comes with a consequence."[6]  When a plaintiff's IFP motion is granted, the Court reviews his complaint to determine if any of his claims should be dismissed.[7]  Judge Nagala therefore referred Mr. Norman's case to me – United States Magistrate Judge Thomas O. Farrish – to review the operative complaint and make recommendations on whether his claims should proceed or be dismissed.[8]

I have carefully studied Mr. Norman's Second Amended Complaint.  Having done so, I recommend that Judge Nagala dismiss all his claims.  As explained below, the Court does not have jurisdiction over many of those claims, and Mr. Norman has failed to plead the rest in a plausible, non-frivolous way.  I recommend, however, that the dismissal be "without prejudice," meaning that Mr. Norman would be given one more opportunity to plead a plausible claim if he can.

## II.   BACKGROUND

The following facts are taken from Mr. Norman's Second Amended Complaint,[9] which are assumed to be true for purposes of this Recommended Ruling,[10] and from the online docket in the

---

[4]      Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2.

[5]      Order Granting Motion to Proceed *In Forma Pauperis*, Docket No. 18.

[6]      *Ortiz v. Tinnerello*, No. 3:22-cv-1318 (AWT) (TOF), 2023 WL 11842871, at *1 (D. Conn. Mar. 22, 2023), *report and recommendation accepted*, slip op. (D. Conn. July 26, 2023).

[7]      28 U.S.C. § 1915(e)(2).

[8]      Order of Referral, Docket No. 65.

[9]      Second Amended Complaint, Docket No. 64.

[10]     *See, e.g., Staton v. Holzbach*, No. 3:20-cv-631 (SRU), 2020 WL 6119382, at *1 n. 4 (D. Conn. Oct. 16, 2020).  At the earliest stage of a civil case, when the Court is considering only whether the complaint states a claim that is sufficient to move forward, the plaintiff's well-pleaded and non-conclusory factual allegations are assumed to be true.  If Mr. Norman's case were to proceed past this early stage, however, he would of course bear the burden to prove each of his allegations.  In other words, Mr. Norman should not conclude that, just because the Court is assuming his factual claims to be true in this Recommended Ruling, it will do so at later stages of the case.

State Case.[11]  Mr. Norman claims to be the "heir and beneficiary" of two estates and two trusts – "the Estate of Esta M. Norman, the Estate of Mavis L. Jones, the Mavis L. Jones Revocable Living Trust, and the Khefe-Rayay Atun Family Trust."[12]  While she was alive, Esta Morgan took out a reverse mortgage on her home at 270-272 Vine Street in Hartford, through a company called Finance of America Reverse LLC ("FAR").[13]

On November 2, 2023, FAR filed a complaint in Hartford Superior Court seeking foreclosure of the mortgage and possession of the home.[14]  Mr. Norman appeared in the case,[15] and a hard-fought contest ensued.  The Superior Court's online docket contains nearly two hundred entries over the twenty-one months between the complaint and the judgment,[16] including two unsuccessful jurisdictional challenges by Mr. Norman.[17]

On February 25, 2025, FAR moved to substitute Wilmington Savings Fund Society, FSB ("Wilmington"), as the plaintiff in the case.[18]  The Honorable Claudia A. Baio granted FAR's motion on March 11, 2025, without objection from Mr. Norman or any party.[19]  Wilmington then

---

[11]  *Finance of Am. Reverse LLC v. Widower, Heirs and/or Creditors of the Estate of Mavis L. Jones a/k/a Mavis L. Norman*, No. HHD-CV23-6176225-S (Conn. Super. Ct.).  Throughout this Recommended Ruling, I will refer to this as the "State Court Docket."  When reviewing a complaint for purposes of 28 U.S.C. § 1915, the Court may take "judicial notice" of all docket filings in a related state court case.  *Bennett v. Career Resources, Inc.*, No. 3:19-cv-1006 (KAD) (SALM), 2019 WL 13272452, at *1 n.1 (D. Conn. July 1, 2019).  To take "judicial notice" means to "accept[], for purposes of convenience and without requiring a party's proof . . . a well-known and indisputable fact[.]"  Black's Law Dictionary 863-64 (8th ed. 2004).

[12]  Second Amended Complaint, Docket No. 64, at para. 9.

[13]  Second Amended Complaint, Docket No. 64, at paras. 17, 29.

[14]  Complaint, State Court Docket (Nov. 2, 2023).

[15]  Appearance of Randy W. Norman, State Court Docket (Nov. 13, 2023).

[16]  *See generally* State Court Docket.

[17]  Motion to Dismiss, State Court Docket, Entry No. 107.00 (Nov. 22, 2023); Motion to Vacate Order, State Court Docket, Entry No. 126.00 (Apr. 8, 2024).

[18]  Motion to Substitute Party Plaintiff, State Court Docket, Entry 168.00 (Feb. 25, 2025).

[19]  Order Regarding Motion to Substitute Party, State Court Docket, Entry 168.86 (Mar. 11, 2025).

moved for a judgment of strict foreclosure and a judicial finding that it was entitled to possession.[20] Judge Baio held a hearing – which Mr. Norman attended – and afterward she granted Wilmington's motion.[21]

The Superior Court entered a judgment of foreclosure in Wilmington's favor on August 12, 2025.[22] It then appointed a committee of sale, and the home sold for $419,000 in December, 2025.[23] On March 23, 2026, Mr. Norman filed a post-sale motion to open the judgment, claiming that it was void for lack of subject matter jurisdiction.[24] The Superior Court has not yet decided that motion. So far as the docket discloses, Mr. Norman has not appealed his loss to the Connecticut Appellate Court.[25]

After the judgment of foreclosure, but before the sale, Mr. Norman filed this federal lawsuit against the State of Connecticut, the Superior Court, FAR, Wilmington, and the other companies and individuals (including judges) who were involved in the State Case.[26] He claimed, among other things, that the defendants "conspired to forge documents," including the mortgage assignment that had been recorded in the Hartford land records at the time of the reverse mortgage transaction.[27] He also alleged that the judges "willfully and knowingly" violated their oaths of office "by failing to timely move to protect and defend Provisions of due process of Law[.]"[28] He

---

[20] Motion for Judgment of Strict Foreclosure and Finding of Entitlement of Possession, State Court Docket, Entry No. 190.00 (May 27, 2025).

[21] Order Regarding Motion for Judgment of Strict Foreclosure, State Court Docket, Entry No. 190.86 (Aug. 12, 2025).

[22] Order Regarding Motion for Judgment of Strict Foreclosure, State Court Docket, Entry No. 190.86 (Aug. 12, 2025).

[23] Committee Report, State Court Docket, Entry No. 303.00 (Dec. 17, 2025).

[24] Motion to Vacate Void Judgment, State Court Docket, Entry No. 312.00 (Mar. 23, 2026).

[25] *See generally* State Court Docket.

[26] Complaint, Docket No. 1 (Nov. 10, 2025).

[27] Complaint, Docket No. 1, at para. 12.

[28] Complaint, Docket No. 1, at para. 40.

asserted twenty-one causes of action, including "deprivation of civil rights under 42 U.S.C. § 1983," "violation of due process," "conspiracy under 42 U.S.C. § 1985," "real estate deed fraud and forgery," and "wrongful foreclosure."[29]  The Clerk of the Court randomly assigned his case to Judge Nagala.

Mr. Norman filed a motion for leave to proceed *in forma pauperis* along with his initial complaint.[30]  Judge Nagala granted his motion on November 19, 2025.[31]  Mr. Norman also filed several other motions, notices, and exhibits, including two motions for restraining orders and preliminary injunctions,[32] a petition for a writ of mandamus,[33] and more than one amended complaint.[34]  Ultimately, Judge Nagala referred the Second Amended Complaint to me for review pursuant to 28 U.S.C. § 1915(e)(2)(B).[35]

In the Second Amended Complaint, as in his initial complaint, Mr. Norman alleges that the participants[36] in his State Case conspired to violate his rights.[37]  His pleading contains ten pages

---

[29]    Complaint, Docket No. 1, at pp. 5-10.
[30]    Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2.
[31]    Order Granting Motion to Proceed *In Forma Pauperis*, Docket No. 18.
[32]    Motion for Restraining Order and Preliminary Injunction to Disqualify Connecticut Attorney General from Representing Public Officials and the State Due to Conflict of Interest, Docket No. 4; Motion for Restraining Order and Preliminary Injunction to Block State Court Foreclosure Proceedings, Docket No. 5.
[33]    Emergency Writ of Mandamus to Compel Dismissal of Unlawful Eviction, Challenge Jurisdiction, Demand Injunctive Relief, and Enforce Constitutional Due Process Under Federal Law, Docket No. 9.
[34]    First Amended Complaint, Docket No. 61; Second Amended Complaint, Docket No. 64.
[35]    Order of Referral, Docket No. 65.
[36]    Mr. Norman named twenty-two defendants in his initial complaint.  *See* Complaint, Docket No. 1, at pp. 3-4.  But he did not include twenty-one of those defendants in the caption of his First Amended Complaint, and accordingly the Clerk of the Court terminated them from the docket pursuant to Rule 10 of the Federal Rules of Civil Procedure.  *See* First Amended Complaint, Docket No. 61.  As will be explained below, however, pleadings filed by *pro se* plaintiffs like Mr. Norman are construed liberally.  I will therefore assume that he did not intend to terminate those defendants.  For purposes of this review, I will consider all the named and unnamed defendants on pages two and three of the Second Amended Complaint as the intended defendants.
[37]    *See, e.g.,* Second Amended Complaint, Docket No. 64, at p. 15.

of (mostly conclusory) allegations and asserts twenty-five causes of action, some of which will be discussed in detail below.  But the gist of his Second Amended Complaint is this: after FAR took Esta Norman's promissory note, it "sold, pooled, and pledged" the note "as 'eligible paper' to a Federal Reserve Bank[;]" and Mr. Norman contends that when a finance company pledges its note to such a bank, it has "the legal effect of extinguishing the private lien on the property, as the debt was satisfied by its conversion into a federal government-backed security."[38]  Mr. Norman therefore reasons that all subsequent assignments of the mortgage were "fraudulent" and "lacked proper equitable right for legal interest," including the assignment from FAR to Wilmington.[39]

In his prayer for relief, Mr. Norman expressly asks this Court to overturn the Superior Court judgment.  He seeks "[a] Declaratory Judgment that the judgment and all orders in [the State Case] . . . are void ab initio for lack of jurisdiction and failure of authentication[;]" along with "[a]n Order compelling the vacatur of all orders and judgments entered in" that case.[40]  He also seeks an award of more than $259,015,000 in compensatory damages "for the fair market value of the property, legal fees, cost, slander of title, slander of credit, and severe emotional distress," along with punitive damages, treble damages, and attorneys' fees and costs.[41]  I will now address whether a complaint making these claims and seeking this relief should move forward or be dismissed.

---

[38]    Second Amended Complaint, Docket No. 64, at paras. 29-30.
[39]    Second Amended Complaint, Docket No. 64, at para. 31.
[40]    Second Amended Complaint, Docket No. 64, at p. 17.
[41]    Second Amended Complaint, Docket No. 64, at 18.

### III.    DISCUSSION

### A.    Review of Complaints Under 28 U.S.C. § 1915(e)(2)

Ordinarily, it costs $405 to start a civil lawsuit in Connecticut federal court.[42]  A federal law excuses poor people from paying these fees, however, if they file affidavits listing their assets and demonstrating that they are "unable to pay."[43]  People who make this showing are said to be proceeding "*in forma pauperis*," which is a Latin term meaning "in the form of a pauper."[44]  "*In forma pauperis*" is often abbreviated "IFP."

The same statute that authorizes courts to grant IFP status to qualifying plaintiffs also directs the courts to review the plaintiffs' complaints to ensure that they are not abusing that right. Because IFP plaintiffs lack "an economic incentive to refrain from filing frivolous, malicious or repetitive lawsuits,"[45] "the statute instructs the Court to review their complaints and dismiss certain types of abusive or facially unmeritorious claims."[46]  Specifically, 28 U.S.C. § 1915(e)(2)(B) instructs federal district courts to dismiss IFP complaints if any of three circumstances apply.

---

[42]    *See* 28 U.S.C. § 1914 (stating that the filing fee for initiating a civil action is $350, and authorizing "such additional fees . . . as are prescribed by the Judicial Conference of the United States"); Report of the Proceedings of the Judicial Conference of the United States, at p. 12 (Mar. 14, 2023) (stating that, in addition to the $350 filing fee, new cases would be subject to a $55 administrative fee effective December 1, 2023), *available at* uscourts.gov/administration-policies/governance-judicial-conference/about-judicial-conference-united-states (last visited June 28, 2026) [https://perma.cc/2VKM-EJKD].

[43]    28 U.S.C. § 1915(a)(1); *see also Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

[44]    *Lewis v. DOC's U.S. State of Connecticut, Inc.*, No. 3:23-mc-116 (VDO) (TOF), 2024 WL 5088764, at *1 (D. Conn. Mar. 20, 2024); *see also* Black's Law Dictionary 794 (8th ed. 2004).

[45]    *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

[46]    *Murphy v. PHH Mortgage Servicers*, No. 3:23-cv-1552 (KAD) (TOF), 2024 WL 2864218, at *2 (D. Conn. Jan. 23, 2024), *report and recommendation accepted and adopted*, slip op. (D. Conn. May 15, 2024).

First, the statute directs courts to dismiss complaints if they are "frivolous or malicious."[47] An "action is frivolous for § 1915(e) purposes if it has no arguable basis in law or fact, as is the case if it is based on an 'indisputably meritless legal theory.'"[48] While courts are less unanimous about what makes a complaint "malicious," it seems clear that a claim should be dismissed on this ground if review of the complaint reveals that it was filed with an "intention or desire to harm another."[49]

Second, the statute instructs federal district courts to dismiss IFP complaints that "fail to state a claim on which relief may be granted."[50] A complaint fails to state a claim when it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[51] "'Facial plausibility,' in turn, requires the pleading of 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[52] In determining whether the plaintiff has pled enough factual information to add up to a legally meritorious claim, courts follow a "two-pronged approach."[53] They begin by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[54] Then, if the complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."[55]

---

[47]     28 U.S.C. § 1915(e)(2)(B)(i).

[48]     *Montero v. Travis*, 171 F.3d 757, 759 (2d Cir. 1999) (quoting *Neitzke v. Williams*, 490 U.S. 324, 325-27 (1989)).

[49]     *Ortiz v. Tinnerello*, No. 3:22-cv-1318 (AWT) (TOF), 2023 WL 11842871, at *3 (D. Conn. Mar. 22, 2023), *report and recommendation accepted*, slip op. (D. Conn. July 26, 2023).

[50]     28 U.S.C. § 1915(e)(2)(B)(ii).

[51]     *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[52]     *Hamm v. Baio*, No. 3:22-cv-401 (OAW), 2023 WL 2867070, at *2 (D. Conn. Jan. 10, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[53]     *Robb v. Connecticut Board of Veterinary Medicine*, 157 F. Supp. 3d 130, 137-38 (D. Conn. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

[54]     *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[55]     *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Third, the IFP statute directs district courts to dismiss any claims that "seek[] monetary relief against a defendant who is immune from such relief."[56]  Money damage claims against the State of Connecticut, for example, are frequently dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii) because the State is often rendered immune from such claims by the Eleventh Amendment to the United States Constitution and the related doctrine of "sovereign immunity."[57]  Similarly, claims against state court judges are often dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii) because a judge is "absolutely immune from lawsuits for money damages arising from her judicial actions."[58]

In determining whether a *pro se* plaintiff's complaint implicates one of these three bases for dismissal, the Court construes his pleadings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers.[59]  The law "is not meant to be a series of traps and travails" for *pro se* litigants, and because it does not aim "to dismiss potentially meritorious arguments because of the particularities of federal practice," *pro se* plaintiffs like Mr. Norman are given a "special solicitude" that often "consists of liberal construction of pleadings [and] motion papers[.]"[60]  In essence, complaints submitted by parties who are unrepresented by an attorney are not scrutinized in the same manner as those submitted by a licensed attorney.

This liberality has its limits, however.  First and foremost, even a *pro se* plaintiff must plead enough facts to plausibly state a claim upon which relief can be granted.  As Judge Covello once wrote, "[a]lthough courts still have an obligation to liberally construe a *pro se* complaint," the

---

[56]    28 U.S.C. § 1915(e)(2)(B)(iii).

[57]    *E.g., Ortiz v. Tinnerello*, No. 3:22-cv-1318 (AWT) (TOF), 2023 WL 11842871, at *5-6 (D. Conn. Mar. 22, 2023), *report and recommendation accepted*, slip op. (D. Conn. July 26, 2023).

[58]    *Reynolds-El v. Strackbein*, No. 3:25-cv-951 (KAD) (TOF), 2025 WL 3470483, at *5 (D. Conn. Dec. 3, 2025), *report and recommendation accepted and adopted*, slip op. (D. Conn. Jan. 6, 2026).

[59]    *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)*; Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

[60]    *Rosa v. Doe*, 86 F.4th 1001, 1007 (2d Cir. 2023) (citations omitted; internal quotation marks omitted).

complaint "must include sufficient factual allegations to meet the standard of facial plausibility."[61] Furthermore, in determining whether the plaintiff has pled enough facts to render his claim plausible, courts cannot fill holes in his complaint by "invent[ing] factual allegations that he has not pled."[62]

Before considering whether a complaint is subject to dismissal for one of the three reasons outlined in 28 U.S.C. § 1915(e)(2)(B), however, the Court must first satisfy itself that it has jurisdiction over the case. The liberal construction due to *pro se* pleadings "does not stretch so far as to cause a court to hear a case that is outside its jurisdiction,"[63] and "[w]here jurisdiction is lacking . . . dismissal is mandatory."[64] I will therefore first address whether the Court has jurisdiction over Mr. Norman's claims, and then I will consider whether any should be dismissed under 28 U.S.C. § 1915(e)(2)(B).

### B.   Subject Matter Jurisdiction

Jurisdiction is "[a] court's power to decide a case."[65] It is a term that encompasses several concepts, including "subject matter jurisdiction" and "personal jurisdiction." When a court asks itself whether it has "subject matter jurisdiction" over a case, it is asking whether it has the power to hear the type of claim that the plaintiff has brought.[66] By contrast, when a court considers whether "personal jurisdiction" exists, it asks itself whether it has power over the parties.[67]

---

[61]   *Vega v. Univ. of Conn. Med. Ctr.*, No. 3:11-cv-1864 (AVC), 2012 WL 1825381, at *1 (D. Conn. May 16, 2012) (citation omitted).

[62]   *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

[63]   *Hamm v. Baio*, No. 3:22-cv-401 (OAW) (TOF), 2023 WL 2867070, at *2 (D. Conn. Jan. 10, 2023), *report and recommendation adopted*, slip op. (D. Conn. Feb. 27, 2023).

[64]   *Yong Qin Luo v. Mikel*, 625 F.3d 772, 775 (2d Cir. 2010) (internal quotation marks omitted).

[65]   Black's Law Dictionary (8th ed. 2004), at p. 867.

[66]   Black's Law Dictionary (8th ed. 2004), at p. 870.

[67]   Black's Law Dictionary (8th ed. 2004), at p. 870.

Like all federal courts, this Court is a court of "limited" subject matter jurisdiction, meaning that it cannot hear just any case.[68]   In this respect, the federal courts are unlike the Connecticut state courts.   The Connecticut Superior Court is a "court of general jurisdiction," meaning that it can decide a very wide array of cases.[69]   But federal courts "possess only that power authorized by Constitution and statute."[70]

Leaving aside some other case types that are not relevant here, Congress has authorized the federal district courts to hear and decide only three types of claims.  First, federal courts may hear cases that "aris[e] under the Constitution, laws, or treaties of the United States."[71]   This is known as the "federal question" form of subject matter jurisdiction, because such a case raises questions about compliance with federal law.   Second, federal courts may decide cases between "citizens of different States" "where the matter in controversy exceeds the sum or value of $75,000."[72]   This is known as "diversity" jurisdiction, because when the plaintiff and the defendant are citizens of different states, their citizenship is said to be "diverse" from each other.   Third, Congress has authorized federal courts to hear and decide certain other claims that are "so related" to a claim properly brought under "federal question jurisdiction" or "diversity jurisdiction" "that they form part of the same case or controversy."[73]   This third type of jurisdiction is called "supplemental jurisdiction" because, in a proper case, it supplements the other two types.

---

[68]    *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).
[69]    *State v. Butler*, 348 Conn. 51, 76 (2023) (D'Auria, J., concurring).
[70]    *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).
[71]    28 U.S.C. § 1331.
[72]    28 U.S.C. § 1332.
[73]    28 U.S.C. § 1367.

Importantly for this case, federal district courts do not have jurisdiction over "cases that are, in substance, appeals from judgments of a state court."[74]  This principle is called the "*Rooker-Feldman* doctrine," because it is based on two United States Supreme Court cases: *Rooker v. Fidelity Trust Co.*[75] and *District of Columbia Court of Appeals v. Feldman.*[76]  Justice Clarence Thomas recently explained the *Rooker-Feldman* principle in simple terms:

> When you lose in trial court, you go to an appeals court. . . . [P]arties who lose in state trial court do not get to appeal to a federal trial court.  Instead, they may take their appeal to a state appeals court and, if a federal statute allows, ultimately seek review in [the United States Supreme Court].[77]

This principle arises out of the fact that Article III of the United States Constitution confers "appellate jurisdiction" solely on the United States Supreme Court, not on federal district courts like this Court.[78]

As noted, the *Rooker-Feldman* doctrine only applies when the plaintiff's claim is essentially an appeal from a state court judgment.  As the Supreme Court has explained, "[t]he *Rooker–Feldman* doctrine is confined to cases of the kind from which it acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments."[79]  To determine whether a plaintiff's federal complaint invokes

---

[74]    *Ortiz v. Tinnerello*, No. 3:22-cv-1318 (AWT) (TOF), 2023 WL 11842871, at *1 (D. Conn. Mar. 22, 2023), *report and recommendation accepted*, slip op. (D. Conn. July 26, 2023).

[75]    *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

[76]    *District of Columbia Court of Appeals v. Feldman*, 46 U.S. 462 (1983).

[77]    *T.M. v. University of Maryland Medical System Corp.*, 608 U.S. __, __ S. Ct. __, 2026 WL 1751823, at *11 (June 18, 2026) (Thomas, J., concurring) (citations omitted).

[78]    *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923) ("The jurisdiction possessed by the District Courts is strictly original."); *Lewis v. DOC's U.S. State of Connecticut, Inc.*, No. 3:23-mc-116 (VDO) (TOF), 2024 WL 5088764, at *4 (D. Conn. Mar. 20, 2024) (explaining the differences between "original" and "appellate" jurisdiction, and why the United States District Court for the District of Connecticut possesses only "original" jurisdiction).

[79]    *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

the *Rooker-Feldman* principle, courts in the Second Circuit examine four factors:  (1) whether the plaintiff lost in state court; (2) whether he is "complain[ing] of injuries caused by [a] state-court judgment," (3) whether he is "invit[ing] district court review and rejection" of the state court judgment, and (4) whether the state court judgment was rendered before the plaintiff brought his claim in federal court.[80]  To be sure, the scope of the *Rooker-Feldman* doctrine is "narrow."[81]  But when these four factors apply, a federal district court lacks jurisdiction over the case and dismissal is required.[82]

In this case, all four factors clearly apply to Mr. Norman's central claims.  First, he lost in state court when Judge Baio entered judgment of foreclosure by sale in Wilmington's favor.[83]  Second, his complaint plainly complains of injuries caused by the judgment.  He explicitly impugns the state court judgment as the alleged product of "a systematic pattern of fraud, forgery, and judicial misconduct," and he claims that he was injured by actual or threatened eviction.[84]  Third, he expressly invited this Court to review and reject the state court judgment when he demanded "[a] Declaratory Judgment that the judgment and all orders in [the State Case] . . . are void ab initio for lack of jurisdiction and failure of authentication," and when he demanded "[a]n

---

[80]     *Hoblock v. Albany County Board of Elections*, 422 F.3d 77, 85 (2d Cir. 2005), *abrogated on other grounds by T.M. v. University of Maryland Medical System Corp.*, 608 U.S. __, __ S. Ct. __, 2026 WL 1751823 (June 18, 2026).

[81]     *T.M. v. University of Maryland Medical System Corp.*, 608 U.S. __, __ S. Ct. __, 2026 WL 1751823, at * (June 18, 2026).

[82]     *Modikhan v. BAC Home Loan Servicing LP*, No. 25-cv-4658 (EK) (HAM), 2026 WL 1802902, at *2 (E.D.N.Y. June 23, 2026) (applying four-factor test from *Hoblock*, even after one of *Hoblock's* other holdings was abrogated by *T.M.*, and dismissing case because "the *Rooker-Feldman* doctrine . . . bars the Court from reviewing the state court's eviction orders").

[83]     Order Regarding Motion for Judgment of Strict Foreclosure, State Court Docket, Entry No. 190.86 (Aug. 12, 2025).

[84]     Second Amended Complaint, Docket No. 64, at pp. 2, 17; *see also Smith v. Bendett & McHugh, P.C.*, No. 3:22-cv-239 (JAM), 2023 WL 372784, at *4 (D. Conn. Jan. 23, 2023) (holding that second *Hoblock* factor was satisfied where the plaintiff "explicitly impugn[ed] the state court foreclosure proceedings and [sought] relief from the state court foreclosure judgment").

13

Order compelling the vacatur of all orders and judgments entered in the state court action."[85]

Fourth and finally, he lost in state court on August 12, 2025,[86] but he did not start this federal court

action until November 10, 2025.[87]

Judge Nagala referenced the *Rooker-Feldman* principle in some of her text orders ruling

upon certain of Mr. Norman's early motions,[88] and Mr. Norman responded and disagreed.  He

argued that principle cannot be invoked in his case because it "assumes the existence of a valid,

final state court judgment," and he claims that no such judgment exists here.[89]  He also appears to

dispute the finality of the Superior Court judgment.[90]

Neither argument is persuasive.  The first argument entirely misapprehends the *Rooker-*

*Feldman* principle, because the whole point of the doctrine is that disputes over the validity of a

state trial court judgment are to be fought out in the state appellate courts, not in the federal trial

court.[91]  And the second argument is similarly unpersuasive, because a state foreclosure judgment

is final under Connecticut law "once the trial court has determined liability and set forth the

essential components of a foreclosure judgment, such as the amount of the debt owed and whether

a foreclosure should be strict or by sale[,]"[92] and an appealable final judgment with these attributes

---

[85]     Second Amended Complaint, Docket No. 64, at p. 17.
[86]     Order Regarding Motion for Judgment of Strict Foreclosure, State Court Docket, Entry No. 190.86 (Aug. 12, 2025).
[87]     *See* Initial Complaint, Docket No. 1.
[88]     *E.g.,* Order Denying Motion for Emergency Writ of Mandamus, Docket No. 22; Order Denying Motion to Strike, Docket No. 39; Order Denying Motions for Reconsideration, Docket No. 42; Order Denying *Ex Parte* Motion, Docket No. 72.
[89]     Motion to Vacate Order, Docket No. 77, at 4.
[90]     Motion to Vacate Order, Docket No. 77, at 3.
[91]     *See T.M. v. University of Maryland Medical System Corp.*, 608 U.S. __, __ S. Ct. __, 2026 WL 1751823, at *11 (June 18, 2026) (Thomas, J., concurring) ("[P]arties who lose in state trial court do not get to appeal to a federal trial court.  Instead, they may take their appeal to a state appeals court[.]").
[92]     *Mase v. Riverview Realty Associates, LLC*, 208 Conn. App. 719, 729 (2021) (internal quotation marks omitted).

entered in the State Case on August 12, 2025.[93]  Because all four *Hoblock* factors apply, and because none of Mr. Norman's counterarguments are persuasive, this Court lacks jurisdiction over his claims to the extent that he either seeks relief from the state court foreclosure judgment or seeks to establish a fact in this litigation that is inconsistent with and would invalidate the state court foreclosure judgment.[94]

### C.    Frivolousness and Failure to State a Claim

Mr. Norman has attempted to plead some claims that might arguably fall outside the *Rooker-Feldman* doctrine.  For example, he asserts several fraud claims,[95] and sometimes a fraud claim "does not require the federal court to sit in review of the state court judgment."[96]  He also alleges "third party debt collector liability" on the part of Wilmington's attorneys,[97] and under the right set of facts, it is possible to assert a claim for "abusive debt collection practices . . . without having to question the validity of a state court foreclosure judgment involving this debt[.]"[98]  The problem for Mr. Norman, however, is that he has not plausibly pled those claims – or, in the parlance of the *in forma pauperis* statute, those claims are "frivolous" and "fail to state a claim on which relief may be granted."[99]

---

[93]    Order Regarding Motion for Judgment of Strict Foreclosure, State Court Docket, Entry No. 190.86 (Aug. 12, 2025).

[94]    *Smith v. Bendett & McHugh, P.C.*, No. 3:22-cv-239 (JAM), 2023 WL 372784, at *5 (D. Conn. Jan. 23, 2023).

[95]    Second Amended Complaint, Docket No. 64, at 5.

[96]    *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014); *see also Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70, 94-95 (2d Cir. 2015) ("[C]laims sounding under the FDCPA, RICO, and state law speak not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments.").

[97]    Second Amended Complaint, Docket No. 64, at 16.

[98]    *Smith v. Bendett & McHugh, P.C.*, No. 3:22-cv-239 (JAM), 2023 WL 372784, at *5 (D. Conn. Jan. 23, 2023).

[99]    28 U.S.C. §§ 1915(e)(2)(B)(i), (ii).

Each of Mr. Norman's twenty-five counts has the same frivolous allegation at its core. He asserts that shortly after Esta Norman gave a promissory note to FAR, "the Note was immediately sold, pooled, and pledged as 'eligible paper' to a Federal Reserve Bank under 12 U.S.C. §§ 342, 343."[100] He believes that such a sale and pledge "had the legal effect of extinguishing the private lien on the property, as the debt was satisfied by its conversion into a federal government-backed security."[101] In his view, this extinguishment deprived FAR – and, by extension, its assignee, Wilmington – of standing to bring a foreclosure action, and rendered all of their lawsuit filings fraudulent.[102] He also contends that the other actors in the State Case – including the judges, attorneys, and court clerk – likewise "fraudulently procured jurisdiction by filing a complaint based on void assignments, false averments of standing, and by concealing the fact that the debt had been extinguished through its pledge as eligible paper to a Federal Reserve Bank, all in violation of the Federal Reserve Act."[103]

This claim is implausible to the point of being frivolous. It is well established that a bank's pledge "does not relieve a borrower of [his] mortgage obligations (e.g., paying the mortgage) or extinguish a lender's right to foreclose on a secured property."[104] Mr. Norman's contrary view evidently arises out of a misreading of the statutes that he cites. 12 U.S.C. § 342 establishes rules governing the relationship between Federal Reserve Banks ("FRBs") and member banks and the

---

[100]    Second Amended Complaint, Docket No. 64, at p. 5.
[101]    Second Amended Complaint, Docket No. 64, at p. 5.
[102]    Second Amended Complaint, Docket No. 64, at p. 5 ("Defendants knowingly failed to disclose" the alleged fact that their interest had been extinguished by the pledge, and "filed affidavits . . . which they knew were false because the debt had been extinguished and the assignments were void").
[103]    Second Amended Complaint, Docket No. 64, at p. 13.
[104]    *Suggs v. M & T Bank*, 230 F. Supp. 3d 458, 463 (E.D. Va. 2017); *see also Cunningham v. Pentagon Federal Credit Union*, No. 3:24-cv-381 (SA) (RP), 2026 WL 49583, at *3 (N.D. Miss. Jan. 7, 2026).

United States Government.[105]  12 U.S.C. § 343, among other things, "grants federal reserve banks the power to provide discretionary emergency loans to nonmembers . . . in 'unusual and exigent circumstances' when such entities are 'unable to secure adequate credit accommodations from other banking institutions.'"[106]  Neither statute "extinguished" the legal obligation incurred by Ms. Norman when she entered into a reverse mortgage on her property.  All the various claims, harms, and purportedly criminal behavior that Mr. Norman alleges in his complaint stem from this flawed understanding.  They are therefore "frivolous," in that they are "based on an 'indisputably meritless legal theory[,]'"[107] and they should be dismissed accordingly.

### D.    Immunity

Finally, Mr. Norman seeks money damages from several entities and individuals who are immune from such claims.  Because 28 U.S.C. § 1915(e)(2)(B)(iii) directs district courts to dismiss any claim that "seeks monetary relief against a defendant who is immune from such relief," these claims should be dismissed for that additional reason.

First, Mr. Norman seeks damages from the State of Connecticut,[108] but the state is immune from such a claim.  The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[109]  Although the literal text of the amendment does not

---

[105]    *United States v. Wells Fargo & Co.*, 943 F.3d 588, 602 n.13 (2d Cir. 2019) (noting that 12 U.S.C. § 342 authorizes FRBs "to maintain accounts for member banks, other depository institutions, and the U.S. Treasury Department").

[106]    *Starr International Co. v. Federal Reserve Bank of New York*, 742 F.3d 37, 41 (2d Cir. 2014) (quoting 12 U.S.C. § 343), *cert. denied*, 573 U.S. 947 (2014).

[107]    *Montero v. Travis*, 171 F.3d 757, 759 (2d Cir. 1999) (quoting *Neitzke v. Williams*, 490 U.S. 324, 325-27 (1989)).

[108]    Second Amended Complaint, Docket No. 64, at p. 2 para. 10, p. 18 para. G.

[109]    U.S. Constitution, amendment XI.

bar suits against a state by its own citizens, the Supreme Court long ago held that the amendment and the related doctrine of sovereign immunity imply such a bar.[110]  Whether brought by its own citizen or by a citizen of a different state, "[t]he Eleventh Amendment bars a suit against a state in federal court unless that state has consented to the litigation or Congress has permissibly enacted legislation specifically overriding the state's immunity."[111]

Second, Mr. Norman also seeks damages from the Superior Court,[112] but that court is likewise immune as a state agency.  Eleventh Amendment immunity and sovereign immunity "apply not only to suits against the state as a whole, but also to suits against any state agency that functions as an 'arm of the state.'"[113]  Because the Superior Court is a state agency and an arm of the state, courts routinely hold that it is immune from damages suits, just like the state itself.[114]

Third and finally, Mr. Norman seeks damages from Judge Baio and the other three judges who issued orders in the State Case,[115] but the judges are immune here as well.  "A judge is

---

[110]    *E.g., Hans v. Louisiana*, 134 U.S. 1, 20 (1890); *see also Employees of Department of Public Health & Welfare, Missouri v. Department of Pub. Health & Welfare, Missouri*, 411 U.S. 279, 280 (1973) ("Although the Eleventh Amendment is not literally applicable since petitioners who brought suit are citizens of Missouri, it is established that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.").

[111]    *Huang v. Johnson*, 251 F.3d 65, 69 (2d Cir. 2001) (internal quotation marks omitted).

[112]    Second Amended Complaint, Docket No. 64, at p. 2 para. 11, p. 18 para. G.

[113]    *Reynolds-El v. Strackbein*, No. 3:25-cv-951 (KAD) (TOF), 2025 WL 3470483, at *6 (D. Conn. Dec. 3, 2025), *report and recommendation accepted and adopted*, slip op. (D. Conn. Jan. 6, 2026); *see also Woods v. Rondout Valley Central School District Board of Education*, 466 F.3d 232, 236 (2d Cir. 2006) ("The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state.").

[114]    *See, e.g., Good v. Hartford GA-14 Court*, No. 3:20-cv-1830 (KAD) (RMS), 2021 WL 11581030, at *3 (D. Conn. Jan. 20, 2021) (citing cases), *report and recommendation accepted and adopted*, slip op. (D. Conn. Mar. 8, 2021).

[115]    Second Amended Complaint, Docket No. 64, at p. 2 paras. 12-15, p. 18 para. G.

18

absolutely immune from lawsuits for money damages arising from her judicial actions."[116] "This is true even if the judge made a mistake while deciding the case, acted maliciously, or decided something that she arguably did not have the authority to decide."[117] While there are some exceptions to the principle of judicial immunity,[118] Mr. Norman does not plausibly allege any facts that would establish any of those exceptions. His claims against the judges in the State Case should be dismissed for this additional reason.

## IV.   CONCLUSION

In summary, I recommend that Judge Nagala dismiss all the claims in Mr. Norman's Second Amended Complaint. I further recommend, however, that the dismissal be without prejudice to another amendment. While Mr. Norman has already amended his complaint twice, he has not yet had an opportunity to do so with the benefit of this statement of the defects in his pleadings. There may be no cure for these defects, but *pro se* plaintiffs are usually permitted at least one try.[119]

This is a recommended ruling by a magistrate judge.[120] **If Mr. Norman wishes to object to my recommendation, he must file that objection with the Clerk of the Court by July 20, 2026.**[121] If he fails to file a timely objection, his failure "operates as a waiver of any further judicial

---

[116] *Reynolds-El v. Strackbein*, No. 3:25-cv-951 (KAD) (TOF), 2025 WL 3470483, at *5 (D. Conn. Dec. 3, 2025), *report and recommendation accepted and adopted*, slip op. (D. Conn. Jan. 6, 2026).

[117] *Reynolds-El v. Strackbein*, No. 3:25-cv-951 (KAD) (TOF), 2025 WL 3470483, at *5 (D. Conn. Dec. 3, 2025), *report and recommendation accepted and adopted*, slip op. (D. Conn. Jan. 6, 2026)

[118] *See Mireles v. Waco*, 502 U.S. 9, 11 (1991).

[119] *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

[120] Fed. R. Civ. P. 72(b)(1); D. Conn. L. Civ. R. 72.1(C).

[121] *See* Fed. R. Civ. P. 72(b)(2) (stating that objections to magistrate judge recommendations shall be filed within fourteen days); D. Conn. L. Civ. R. 72.2(a) (allowing five additional days for persons who, like Mr. Norman, will receive the recommendation from the Clerk of the Court via mail).

review[.]"[122]   In particular, failure to file a timely objection operates as a waiver of the right to

seek appellate review in the Court of Appeals.[123]

/s/ Thomas O. Farrish
Hon. Thomas O. Farrish
United States Magistrate Judge

---

[122]    *Small v. Secretary of Health & Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

[123]    *Small v. Secretary of Health & Human Services*, 892 F.2d 15, 16 (2d Cir. 1989); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6; *Impala v. U.S. Department of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order).